HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT C. MILLS,

Plaintiff,

v.

BANK OF AMERICA, N.A. et. al,

Defendants.

CASE NO. 3:14-cv-05238-RBL

ORDER GRANTING MOTION TO DISMISS

[DKT. # 13]

THIS MATTER comes before the Court on Defendant Bank of America, N.A.'s (BANA) Motion to Dismiss [Dkt. # 13]. *Pro Se* Plaintiff Scott C. Mills defaulted on his home loan in December of 2009, and BANA initiated the foreclosure process in 2012 through their successor trustee, Bishop, White, Marshall & Weibel (BWMW).[1] Despite having a pending loan modification application in process with BANA, BWMW sold the home at auction in February 2014. Mills sued BANA and BWMW asserting several federal and state law claims that they wrongfully foreclosed his home, and is seeking the reversal of the foreclosure and damages. In response, BANA filed a Motion to Dismiss arguing that (1) Mills failed to state a claim, (2) Mills

---

[1] While BWMW's current business name is now Bishop, Marshall & Weibel, this order will use BWMW since both Mills and BANA refer to it as BWMW. BWMW has already been dismissed from the case.

lacked standing to bring a claim, (3) this Court lacks subject matter jurisdiction, and (4) the Reply to the Motion to Dismiss was tardy.[2]

## I.   BACKGROUND

In July 1999, Mills executed a deed of trust to secure a $204,000 loan on property at 2609 358th Street Court South, Roy, WA 98580 in Pierce County ("Property"). The Deed of Trust was eventually transferred to BANA in 2008.  Sometime after Mills became delinquent starting in December 2009, Mills claims BANA advised that he apply with it for a loan modification using the Making Home Affordable (MHA) program.[3] Mills applied in December 2013, and BANA confirmed that it received a completed application by February 2014. An "FAQ" on BANA's website indicated that his loan would not go into foreclosure sale while BANA reviewed his loan's eligibility.

While Mills was in default, BANA appointed BWMW as the successor trustee in September 2012. That same month, BWMW initiated the foreclosure process, sending a Notice of Default to Mills and posting it to Mills' addresses on record.[4] In August 2013, the Notice of Trustee's Sale indicating that the property would be sold on December 20, 2013 was sent to Mills and posted on the Property. The Property sold at public auction on Friday, February 28, 2014, completing the foreclosure sale. As of February 2014, Mills' MHA application with BANA was still pending. Prior to the sale, no legal action was filed regarding the Property.

---

[2] Mills is pro se, and his Reply was four days late.  The court will consider it in the absence of prejudice to BANA.

[3] Mills also claims that BANA told him to stop paying his loan, but he does not indicate when BANA advised him to stop paying.

[4] The Declaration of Posting in exhibit 1 appears to have a typo for the address of the Property; however, the posting was still done at one of the listed addresses for Mills in the Affidavit of Mailing included with the Notice of Default.

## II.  DISCUSSION

Mills argues that BANA did not properly comply with the DTA procedures during the foreclosure process, and BANA broke its contract and promises to him that it would not foreclose on his home while his MHA loan application was under review. Based on these arguments, he makes claims for:  (1) breach of third party contract based on BANA's participation in the MHA loan program; (2) violation of the Washington Deed of Trust Act (DTA); (3) breach of contract based on the MHA application (4) equitable estoppel; (5) violation of the Washington Consumer Protection Act (CPA); (6) promissory estoppel; (7) quiet title; (8) restitution for violation of the CPA; and (9) intentional infliction of emotional distress.  He requests that the Court:  (1) rescind the foreclosure; (2) quiet title; (3) complete the loan modification application; (4) enjoin BANA and BWMW from taking further action on the Property; and (5) provide monetary damages.

BANA seeks dismissal of these claims under multiple theories.  First, BANA argues that the claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6), contending that he provided insufficient facts to state a claim for relief. BANA also argues that the claims for breach of third party contract, breach of contract, equitable estoppel, promissory estoppel, quiet title, and intentional infliction of emotional distress are waived; under Washington Law, he cannot enjoin the sale of a foreclosed home after the foreclosure sale. Additionally, BANA argues that relief cannot be granted for the breach of third party contract because Mills lacks standing to bring a private right of action against BANA to complete the MHA loan modification application. Second, BANA maintains the parties are non-diverse and the court lacks subject matter jurisdiction under Rule 12(b)(1).[5]

---

[5] See footnote 1 about BANA's claim for Mills' tardy Reply to the Motion to Dismiss.

When a *pro se* petitioner is facing dismissal, the court will construe his or her pleadings liberally. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) ("[W]e have an obligation where the petitioner is *pro se* . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.").  Although the Court holds the pleadings of *pro se* plaintiffs to "less stringent standards than those of licensed attorneys," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dept. of Navy*, 66 F.3d 193, 198–99 (1995). The Court should not "supply essential elements of the claim that were not initially pled." *Bruns v. National Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

**A.      Federal Claims for Breach of Third Party Contract**

Mills asserts only one claim involving federal law.  He claims that his MHA loan application should have halted the foreclosure process until BANA completed its review of the application. The MHA program is part of a larger federal loan modification program, the Home Affordable Modification Program (HAMP). HAMP was established under the Troubled Asset Relief Program (TARP).  Mills asserts that because BANA received TARP funds and because he is an intended third party contract beneficiary under HAMP and TARP, he has a private right of action to require BANA's compliance with these programs. BANA argues that his TARP/HAMP claims are not permitted because neither program authorizes a private right of action—he lacks standing to sue BANA to enforce its compliance.

Mills' TARP/HAMP claims fail because neither program authorizes a private right of action; neither permits borrowers to sue their lenders. TARP provides a private right of action to homeowners against the Treasury Secretary if they have been injured by the Secretary's actions.

12 U.S.C. § 5229. However, TARP does not authorize plaintiffs to bring actions against lenders or other private defendants, and the courts have declined to extend this right. *See Pantoja v. Countrywide Home Loans, Inc.,* 640 F.Supp.2d 1177, 1185 (N.D. Cal. 2009). Similarly, HAMP does not authorize a similar private right of action, and the courts have declined to extend this right. *Tran v. Bank of America, N.A.*, 2012 WL 5384929, at *4 (W.D. Wash. 2012).  Because Mills lacks a private right of action, he states a claim for relief which cannot be granted. BANA's Motion to Dismiss these federal claims is GRANTED, and these are DISMISSED with prejudice.

**B.      State Law Claims**

Mills' remaining claims are Washington state law-based claims that BANA challenges under Rule 12(b)(6).  Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must allege facts to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion.  *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (citations and footnote omitted).  This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).  However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend.  *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

## 1.      *Washington Deed of Trust Act*

Mills disputes whether BANA (through BWMW) complied with the DTA procedures. Mills claims that he did not receive the proper notices required by the DTA prior to the foreclosure sale.  BANA argues that it complied with the DTA procedures and its compliance foreclosed all remedies Mills could seek under the DTA.

The DTA describes, among other things, the procedures and remedies for a non-judicial foreclosure. RCW 61.24 *et. seq*. A trustee sale for a non-judicial foreclosure requires strict compliance with the DTA.  *See Knecht v. Fidelity Nat. Title Ins. Co.*, 2013 WL 7326111 at *3 (W.D. Wash. 2013). The DTA requires the trustee to issue to the borrower a Notice of Default and a Notice of Trustee's Sale and lists the procedures for doing so. RCW 61.24.030(8); RCW 61.23.040(1)(b) (respectfully). RCW 61.24.130 provides the only procedures by which a borrower can enjoin the foreclosure sale, and the procedures describe how to bring a lawsuit to restrain the sale *prior to the sale*.  *See Brown v. Household Realty Corp.*, 146 Wn. App. 157, 163

(2008), *review denied*, 165 Wn.2d 1023 (2009).  Failure to follow these procedures for enjoining the sale waives a claim to enjoin the sale. *Id.* at 163.

A borrower who does not bring an action to challenge the foreclosure sale limits future claims against the trustee. Failure to bring an action to enjoin the sale does not waive a claim for damages asserting: "(a) Common law fraud or misrepresentation; (b) A violation of Title 19 RCW; (c) Failure of the trustee to materially comply with the provisions of [RCW 64.21 et. seq.]; or (d) A violation of RCW 61.24.026." RCW 64.21.127(1). However, a post-sale claim is subject several limitations, as the claim: can only seek actual monetary damages; if brought under the CPA, is restricted to certain types of damages; and cannot affect the finality of the foreclosure sale, the recording a lis pendens or similar document, or encumbering or clouding title. RCW 64.21.127(2).

BANA's compliance with the DTA rendered the sale of the foreclosed home final. While Mills asserts he did not receive the Notice of Default or a Notice of Trustee's Sale, BANA and BWMW's exhibits demonstrate they complied with the requirements for a non-judicial foreclosure—they provided the Notice of Default and a Notice of Trustee's Sale in a manner prescribed by the DTA. Mills' reply continues to offer bare assertions that he did not receive the proper notice, despite the exhibits.

Even though the initial Notice of Default may list an incorrect address on the verification of the posting on the Property, BANA posted a copy to another address provided by Mills. Additionally, Mills does not provide evidence showing he tried to enjoin the sale of his house before it was sold at auction. Because Mills did not challenge the foreclosure and pending sale of the Property before it was sold, he cannot attempt to recover the Property. Mills has not (and cannot) plausibly assert that BANA has violated the DTA.  BANA's Motion to Dismiss Mills'

DTA claims GRANTED these claims are DISMISSED with prejudice and without leave to amend.

### 2.    *Breach of Contract*

Mills claims that he and BANA formed a contract when he submitted the MHA loan application—and the terms of this contract, specifically BANA's website "FAQ," precluded BANA from foreclosing on the home while the MHA loan application was being reviewed. BANA argues that the application does not and cannot form an actionable contract.

Alternatively, it argues that the loan modification application did not modify the existing loan contract because no consideration was received. Even if the loan application created a new contract or modified the existing loan contract, BANA contends that the contract did not include the promise to not foreclose on the Property while the application was being reviewed. BANA also adds that the Deed of Trust permitted the foreclosure.

A contract is formed when there is an offer, an acceptance, and consideration. *E.g. FDIC v. Uribe,* 171 Wn. App. 683, 697 (2012) (quoting *Bulman v. Safeway*, 144 Wn.2d 335, 351 (2000)). For a breach of contract claim, there must be (1) a duty imposed by the contract, (2) a breach of duty, and (3) damages. *C 1031 Properties, Inc. v. First American Title Ins. Co.*, 175 Wn. App. 27, 33 (2013). "There must be consideration separate from that of the original contract for a valid contract modification." *Dragt v. Dragt/DeTray*, 139 Wn. App. 560, 571 (2007).

Mills has not plausibly alleged (and cannot, consistent with the facts already alleged) that a new contract was formed, the existing loan contract was modified, or that the FAQ was incorporated into a contract.  Mills has not provided any facts which show a contract was formed.  Even if a contract was formed and reviewing the situation in the best possible light— BANA extending the MHA program to Mills was an offer and his submission of the application

was an acceptance—there was no consideration was exchanged for the application.  Similarly, assuming the application could be a modification to the contract for the loan, this modification would not be part of the contract because there was no consideration.  Even if Mills could prove a contract was created or modified, his novel claim of the FAQ being incorporated as part of the contract is not supported by any law or fact asserted is the case. In addition, the terms of the Deed of Trust permitted BANA to continue to foreclose the Property even as the MHA loan modification was being processed. Mills' assertions, without more, does not show that a contract was formed or violated when he submitted the MHA loan application or that BANA violated a contract.  BANA's Motion to Dismiss Mills' contract claim is GRANTED, and this is DISMISSED with prejudice.

### 3.    *Equitable Estoppel*

Mills claims that BANA breached its representations that his loan would not be foreclosed while he was in consideration for the MHA loan modification. To sufficiently assert a claim for equitable estoppel, Mills must still be able to enjoin BANA from foreclosing on the property. Because RCW 61.24.127 prevents Mills from enjoining BANA, he states a claim for relief which cannot be granted.  BANA's Motion to Dismiss this claim is GRANTED, and this is DISMISSED with prejudice.

### 4.    *Consumer Protection Act*

Mills claims that BANA's conduct while his MHA application was being considered was an unfair and deceptive practice. As evidence, he claims that BANA violated the 14 day mediation request required under RCW 61.24.31(c), thus violating the DTA.  BANA argues that Mills has not sufficiently alleged that the foreclosure process was unfair or deceptive, or had an impact on the public interest.

In order to prevail on a private CPA claim, Mills must prove: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) an impact on the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785 (1986). The failure to establish even one of these elements is fatal to a plaintiff's claim. *Id*. at 793.

An unfair or deceptive act or practice requires the plaintiff to prove that the act "had the capacity to deceive a substantial portion of the public." *Id*. at 785. The first two elements of a CPA claim may be satisfied by establishing that the alleged act constitutes a *per se* unfair act or practice, which exists when a statutory violation has been "declared by the Legislature to constitute an unfair or deceptive act in trade or commerce." *Id.* at 785–86. A *per se* unfair trade practice requires the legislature to "'specifically define[] the exact relationship between a statute and the CPA.'" *Anderson v. Valley Quality Homes, Inc.*, 84 Wn. App. 511, 516 (1997) (quoting *Hangman Ridge*, 105 Wn.2d at 787). Such *per se* unfair practices are limited to specific legislative declarations that violation of the underlying statute constitutes an unfair or deceptive act or practice. *See id.* at 518–19. RCW 61.24.135 describes per se violations within the DTA; one of the violations is a failure to mediate in good faith. *See* RCW 61.24.135(2)(a); RCW 61.24.163(7)(a)(iii).

To establish that a defendant's actions injures the public interest, the plaintiff must establish that the actions: "(1) Violates [a statute within the CPA]; (2) Violates a statute that contains a specific legislative declaration of public interest impact; or (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093.

Mills's Complaint does not satisfy the first and third elements. Mills fails to assert that BANA's actions were unfair or deceptive. The FAQ statements were not promises or implicit guarantees, and Mills had ample notice (for more than a year) that, despite the FAQ, his own foreclosure was going forward. Mills received all of the required notices prior to the foreclosure sale in compliance with the DTA. BANA acted within its authority as described in the Deed of Trust when the property was sold. Additionally, Mills asserts that BANA violated the 14 day mediation request, but he did not offer anything else beyond this assertion to establish the *per se* violation. Mills has not sufficiently alleged that BANA's actions were a violation of the DTA or were unfair or deceptive.

Nor can Mills plausibly allege that BANA's actions affect the public interest. His Complaint does not show that BANA actions violate the CPA, violate a specific legislative declaration of public interest impact, or that they could have or did cause injury to other people. Mills' CPA claim fails because he cannot plausibly claim that BANA's FAQ or actions were a deceptive or unfair promise or guarantee, or that BANA's actions impact the public interest. BANA's Motion to Dismiss this claim is GRANTED, and it is DISMISSED with prejudice.

### 5. *Promissory Estoppel*

Mills claims that BANA's (website) promise not to foreclose while his MHA loan application was in process led him to not seeking alternatives and resulted in the completion of the foreclosure sale. BANA argues that Mills has not and cannot plausibly allege that any promise was made to him that he would be approved for a loan modification, and that any claimed reliance on such a promise was not justifiable or equitable as a matter of law.

To sufficiently assert a promissory estoppel claim, Mills must establish the following elements:

(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Corbit v. J.I. Case Co.,* 70 Wn.2d 522, 539 (1967).

Here, Mills was already delinquent and in foreclosure at the time he submitted the MHA application. His position did not change, and he did not assert any additional opportunities he had to go forgo once he submitted the MHA application. Also, the sale of the property cannot be altered because RCW 61.24.127, discussed earlier, prevents non-monetary remedies post-sale. Because Mills could not change his position or forgo opportunities based on the MHA loan application and RCW 61.24.127 precludes non-monetary remedies, his claim for relief cannot be granted. BANA's Motion to Dismiss this claim is GRANTED, and this is DISMISSED with prejudice.

### 6.   *Quiet Title*

Mills claims that he is allowed to quiet title against those who assert a hostile right to his property. As discussed earlier, RCW 61.27.127 post-sale claims are limited to monetary damages and he states a claim for relief which cannot be granted. BANA's Motion to Dismiss this claim is GRANTED, and this is DISMISSED with prejudice.

### 7.   *Restitution for Violation of the Consumer Protection Act*

Mills claims that BANA engaged in unfair and deceptive practices, which included violating RCW 61.24.040(5)—this requires the Trustee sale to occur on a Friday, unless Friday is a legal holiday—by selling the Property on February 28, 2014. February 28, 2014, was a Friday.  BANA's Motion to Dismiss this claim is GRANTED, and this is DISMISSED with prejudice.

8.   *Intentional Infliction of Emotional Distress*

Mills claims that the sale of the property caused the intentional infliction of emotional distress to him. A claim for the intentional infliction of emotional distress includes a requirement that the conduct was "beyond all possible bounds of decency . . . [and] utterly intolerable in a civilized community." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). Mills does not provide any assertions that the sale was beyond the bounds of decency and utterly intolerable, and he has not pled any facts to state a claim for relief. BANA's Motion to Dismiss this claim is GRANTED, and it is DISMISSED with prejudice.

### III.   CONCLUSION

Defendant BANA's Motion to Dismiss Mills' claims is GRANTED and all of his claims are DISMISSED.  Because he cannot plausibly amend these claims to cure their fatal defects, leave to amend is DENIED and the claims are dismissed with prejudice.

Dated this 22nd day of August, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE